IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

MEREDITH MANDEVILLE,
Executrix of the Estate of Joel Dew,

           Plaintiff,

v.                                                 CIVIL ACTION NO.   5:14-cv-25013

STEVEN HARRY NATHANSON and
SOUTHEASTERN EMERGENCY
PHYSICIANS, LLC,

           Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the *Renewal of Defendant's Second Affirmative Defense and Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 80), filed by Defendant Steven Harry Nathanson, M.D. (Dr. Nathanson), the *Memorandum of Law in Support* (Document 82), *Defendant Southeastern Emergency Physicians, LLC's Joinder in Defendant Steven Harry Nathanson, M.D.'s Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 86), the *Plaintiff's Response to Defendant's Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 92), and *Defendant Steven Harry Nathanson, M.D.'s Reply to Plaintiff's Response to Defendant Steven Harry Nathanson, M.D.'s Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 94). For the reasons set forth herein, the Court finds that the Defendant's motion should be denied.

1

**FACTUAL AND PROCEDURAL HISTORY**

The following facts are relevant for the present motion. On September 3, 2012, the decedent in this case, Joel Dew, developed symptoms of illness, including fever, nausea, vomiting, and diarrhea. Mr. Dew, a personal trainer and musician by trade, continued to feel ill on September 5, 2012, and cancelled several training appointments. The next day, September 6, 2012, he was involved in a single vehicle car accident, resulting in deployment of the airbags in his vehicle and a cracked windshield. According to the records of the West Virginia State Police, Mr. Dew crossed into the opposing lane, struck a ditch, and caused significant damage to his front driver-side tire and quarter panel. However, Mr. Dew did not lose consciousness. EMS and law enforcement responding to the accident found that Mr. Dew had a fever of 101.4 degrees, tachycardia, and altered mental state. Specifically, EMS noted that Mr. Dew "appear[ed] very confused as if under the influence of some type of drug or medication," and was "unable to state where he was traveling to, or what roadway he was driving on." (State of West Virginia Uniform Traffic Crash Report Crash Data, at 2, att'd as Ex. E to Def.'s Mot. for Summ. J. on Plaintiff's Punitive Damages) (Document 81).

The parties dispute the cause of Mr. Dew's mental state. The Defendant notes that EMS believed Mr. Dew to be "under the influence of some substance." (Def.'s Response, at 2, citing Dep. of Bruce Price, at 6:4-7; State of West Virginia Uniform Traffic Crash Report, at 2., collectively att'd as Ex. E to Def.'s Mot. for Summ. J. on Plaintiff's Punitive Damages.) The Plaintiff, by contrast, presents expert testimony that Mr. Dew's mental state was the result of a massive underlying infection, specifically, sepsis. It is undisputed that Mr. Dew was then

2

transported to Raleigh General Hospital in Beckley, West Virginia, at 11:14 a.m. that morning, and placed into an examination room at 11:17 a.m.  Raleigh General Hospital is designated a Level III trauma center by the West Virginia Department of Health and Human Resources Bureau for Public Health.   The triage nurse at Raleigh General Hospital classified Mr. Dew as a "Priority III" patient, and the Plaintiff acknowledges that "Category III care involves conditions that are classified as emergency condition[s]."   (Pl.'s Mem. of Law in Supp. of Mot. for Summ. J., at 2.) During his intake, Mr. Dew disclosed to the triage nurse that he had suffered flu-like symptoms for several days, including fever, nausea, and vomiting.

      The Defendant in this case, Dr. Steven Harry Nathanson, M.D., along with other health care providers, treated Mr. Dew at Raleigh General Hospital.   Dr. Nathanson examined Mr. Dew, and ordered blood and urine studies, as well as intravenous fluids and the administration of an anti-inflammatory drug, Toradol.   Dr. Nathanson noted that the context of the medical examination was "lost control 2° illness."   (Raleigh General Hospital Emergency Provider Record, at 1, att'd as Ex. C to Def.'s Mot. for Summ. J. on Plaintiff's Punitive Damages).   At 12:48 p.m., Dr. Nathanson ordered that Mr. Dew be discharged from Raleigh General Hospital.  He was then discharged in "stable" condition at 1:22 p.m., and given a set of standard discharge instructions for patients involved in a motor vehicle collision.   (Medical Records, att'd as Ex. 1 to Pl.'s Mot. for Summ. J., at 1.)   The discharge instructions, entitled "Motor Vehicle Accident," recommended that Mr. Dew eat a bland diet, drink plenty of clear liquids, avoid dairy products, take Tylenol for any discomfort, and return to Raleigh General Hospital for any new or worsening medical problems. (Emergency Provider Record, at 3, att'd as Ex. C to Def.'s Mot. for Summ. J. on Plaintiff's Punitive Damages.)   The medical records indicate that Raleigh General Hospital

3

personnel characterized Mr. Dew's condition as "improved" at the time he was discharged. (*Id*. at 2.)

At the time Dr. Nathanson discharged Mr. Dew, the results of the blood tests had not been received. Dr. Nathanson testified that he had reviewed the urine tests prior to discharge, but the parties dispute whether this was possible. The blood tests ultimately indicated that Mr. Dew had, *inter alia*, an elevated white cell count, elevated granulocytes, low platelets, low lymphocytes, low sodium, elevated creatinine, low calcium, and blood in urine. According to the Plaintiff, Mr. Dew's test results satisfy the criteria of the American College of Chest Physicians and the Society of Critical Care Medicine for Systemic Inflammatory Response Syndrome. (Pl.'s Mem. in Supp. of Mot. for Summ. J., at 2.)

After his discharge from the hospital, Mr. Dew's condition continued to worsen. On the night of September 7, presumably to alleviate pain caused by his symptoms, Mr. Dew took a prescription narcotic pain reliever prescribed to the Plaintiff, Ms. Mandeville. The next morning, Mr. Dew was transported by ambulance from his home to Raleigh General Hospital, and seen again by Dr. Nathanson. Dr. Nathanson noted that the Plaintiff had an altered mental state, intracranial hemorrhage, meningitis, and sepsis. Dr. Nathanson ordered that Mr. Dew be transported to Charleston Area Medical Center in Charleston, West Virginia. After arriving there, Mr. Dew suffered cardiopulmonary arrest and died. The Plaintiff claims that the cause of death was systemic Methicillin Resistant Staphylococcus Aureus infection. It is undisputed that a subsequent autopsy of Mr. Dew revealed systemic sepsis in the brain, cerebellum, myocardium and coronary arteries, lungs, liver, spleen, pancreas, and kidneys.

## STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014). A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010). A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the non-moving party's favor. *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23. When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the non-moving party. *Hoschar*, 739 F.3d at 169. However, the non-moving party must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at

5

\*3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).

In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, \*3 (S.D. W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir. 1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## DISCUSSION

The sole issue before the Court on this motion is whether summary judgment is appropriate on the Plaintiff's claim for punitive damages. In seeking to carry his burden of showing that no genuine dispute of material fact exists on this issue, the Defendant makes two arguments. First, the Defendant argues that the Plaintiff's claim for punitive damages is barred by the Medical Professional Liability Act (MPLA), West Va. Code §55-7B-1, *et. seq*. Section 55-7B-9C(a) of the MPLA, "Limit on liability for treatment of emergency conditions for which patient is admitted to a designated trauma center; exceptions; emergency rules," contains a statutory cap on damages for actions sounding in West Virginia law which arise from the care of an "emergency condition" for which the "patient enters a health care facility designed by the Office of Emergency Medical

Services as a trauma center …" W.Va. Code §55-7B-9C(a). More specifically, the Defendant argues that in light of this liability limitation, and the Plaintiff's failure to plead facts which support an exception to the liability cap that is "[i]n willful and wanton or reckless disregard of a risk of harm to the patient," under Section 55-7B-9(f)(1) of the MPLA, the Plaintiff's claim cannot survive summary judgment.

This Court has previously indicated that the applicability of the MPLA to this case is fact dependent and more appropriately determined after the evidence is presented. *See Order* (Document 146). Moreover, as the Plaintiff points out, the MPLA does not expressly prohibit the awarding of punitive damages in medical malpractice cases. Although the Defendant argues that the "common law of West Virginia does not permit punitive damages recovery in a case like this one," the precedent cited by the Defendant sets forth no such rule, and the Court has been unable to identify any legal bar to the claim under West Virginia law. (Def.'s Mem. of Law in Supp. of Mot. for Summ. J., at 5).[1]

The Defendants also argue that at the close of discovery, there was no evidence that Dr. Nathanson, in rendering care to Mr. Dew, engaged in "some intentional act with knowledge of an actual or potential adverse consequence to another." (Def.'s Reply, at 3-5, citing *Stephens v. Rakes*, 775 S.E.2d 107 (W.Va. 2015). The basis of this argument is the West Virginia Supreme Court of Appeals decision in *Stephens*. In *Stephens*, a jury in Mercer County, West Virginia, found a physician liable for non-economic and punitive damages for his negligent administration

---

1 The Defendants cite to Syl. Pt. 5, *Manor Care v. Douglas*, 763 S.E.2d 73 (W.Va. 2014), but that syllabus point merely restates the traditional West Virginia rule, which the Court will examine below, that gross fraud, malice, oppression, or wanton, willful, or reckless conduct in a tort action allows punitive damages. Similarly, the Defendants cite to Syl. Pt. 7, *Michael v. Sabato*, 453 S.E.2d 419 (W.Va. 1994), which indicates that a punitive damages instruction is only appropriate where "there is evidence that a defendant acted with wanton, willful, or reckless conduct…" These cases articulate the traditional West Virginia rule on punitive damages, and the Defendants provide no rationale for why this rule forecloses punitive damages in this particular case beyond a mere conclusory statement.

of certain medications to a patient suffering from various chronic lung problems. *Stephens*, 775 S.E.2d at 113-114. Specifically, the Defendant approved the administration of Seroquel to a patient, despite medical records indicating that the patient was allergic to that medication. (*Id*. at 112-113.) The patient died, and the Defendant listed the cause of death as a "consequence of Adverse Drug Reaction" to the Seroquel. *Id*. at 113. After discovery, the Defendant moved for summary judgment on, inter alia, the viability of the Plaintiff's claim for punitive damages. *Id*. at 118. On appeal, the Defendant argued that the trial court erred in denying his motion for summary judgment on the availability of punitive damages. The Supreme Court of Appeals affirmed the trial court's ruling finding that under West Virginia law, a Plaintiff could sustain a punitive damages claim by showing conduct that was "willful, wanton, or reckless." *Id*. at 119, citing *TXO Production Co. v. Alliance Res. Corp.*, 419 S.E.2d 870, 877 (W.Va. 1992). Reviewing the evidence presented at trial, the Court found that there was "sufficient evidence presented for a jury to be convinced that willful, wanton and reckless conduct occurred," and affirmed the trial court. *Id*.

The Defendants go to great lengths to distinguish *Stephens* from the present case. Specifically, the Defendant argues that "[t]here is no fact that the [P]laintiff can bring this Court that Dr. Nathanson knowingly had information concerning the care and treatment of this patient that he ignored…" (Def.'s Mem. of Law in Supp. of Mot. for Summ. J., at 6.) However, the *facts* in *Stevens* do not set the parameters under West Virginia law for when a claim for punitive damages in a medical malpractice case survives summary judgment. Rather, *Stephens* merely affirms the standard for punitive damages established by *TXO Production Co.* In that case, the Supreme Court of Appeals of West Virginia noted that while "[o]riginally, punitive damages were

8

awarded only to deter malicious and mean-spirited conduct," the definition had grown to encompass "extremely negligent conduct that is likely to cause serious harm." *TXO Production Corp.*, 419 S.E.2d at 474.

Further, in *Stephens*, the Supreme Court of Appeals of West Virginia noted the holding of *Workman v. UA Theatre Circuit, Inc.*, 84 F.Supp. 2d 79 (S.D.W.Va. 2000), where then Chief Judge Haden found that under West Virginia law, "[i]n actions of tort, where gross fraud, malice, oppression, or willful, wanton, or *reckless conduct* or criminal indifference to civil obligations affecting the rights of others appear … the jury may assess punitive damages." *Workman*, 84 F.Supp.2d at 793, citing *Alkire v. First National Bank of Parsons*, 475 S.E.2d 122, 129 (W.Va. 1996). This rule remains intact. The Defendants' contention that under West Virginia law, evidence of an "intentional act," with knowledge of actual or potential consequences, is necessary for the Plaintiff's punitive damages claim to proceed, is not supported by applicable law.

Viewing the evidence in the light most favorable to the non-moving Plaintiff, Mr. Dew was transported to Raleigh General Hospital on September 6, 2012, after he lost control of his vehicle and crossed at least one lane of traffic, before crashing into a ditch. At the scene of the accident, Mr. Dew was apparently so disoriented that he could not remember the circumstances leading to the accident, and emergency services personnel believed he may have been under the influence of unknown substances. Mr. Dew also had a fever. Dr. Nathanson examined Mr. Dew, and Mr. Dew admitted to having suffered from flu symptoms, including fever and vomiting, for several days. Dr. Nathanson treated Mr. Dew with an anti-inflammatory agent, Toradol, together with fluids. Dr. Nathanson ordered blood and urine tests, but did not wait for the blood tests to return results before determining Mr. Dew was stable, and deciding to discharge Mr. Dew. After Mr.

Dew was discharged, the blood tests ordered by Dr. Nathanson revealed multiple signs of systemic infection. After suffering for several more days, Mr. Dew was again transported to Raleigh General Hospital, where he was diagnosed with systemic sepsis and meningitis.

Reviewing these facts, the Plaintiff's expert witness, Dr. Galen, reported that "[d]ue to Dr. Nathanson's reckless disregard for the consequences of the lack of: diagnostic testing, initiation of appropriate antibiotics, appropriate consultation and admission to the hospital" on September 6, 2012, Mr. Dew "languished unnecessarily at home" and "developed progressive sepsis …" (Report of Dr. Galen, att'd as Ex. J to Def's Mot. for Summ. J., at 3.) The Defendant attempts to mitigate this adverse fact by asserting that Dr. Galen "will say any magic words requested by counsel if the Court permits her." (Def.'s Reply, at 8.) However, the facts of record and the report of Dr. Galen create a genuine issue of material fact as to whether Dr. Nathanson's conduct was such that the Plaintiff could recover punitive damages. As a result, the Defendants' motion for summary judgment on the claim for punitive damages should be denied.

## CONCLUSION

Wherefore, after careful consideration, the Court **ORDERS** that the *Renewal of Defendant's Second Affirmative Defense and Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 80) be **DENIED**. Further, inasmuch as the Clerk of the Court has classified *Defendant Southeastern Emergency Physicians, LLC's Joinder in Defendant Steven Harry Nathanson, M.D.'s Motion for Summary Judgment as to Plaintiff's Punitive Damages Claim* (Document 86) as a motion, the Court **ORDERS** that the same be **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: June 24, 2016

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA